Craig A. Schloss (SBN 102488)
Aimee Axelrod Parker (SBN 255589)
COZEN O'CONNOR
501 West Broadway, Suite 1610
San Diego, CA  92101
Telephone: (619) 234-1700
Facsimile: (619) 234-7831
Email:      cschloss@cozen.com
            aaparker@cozen.com

Andrew J. Rolfes, Esq. (*Pro Hac Vice Pending*)
Robert S. Hawkins, Esq. (*Pro Hac Vice Pending*)
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
Tel.:  (215) 665-2000
Fax:   (215) 665-2013
Email:      arolfes@cozen.com
            rhawkins@cozen.com

Counsel For Plaintiff
PACIFIC HARBOR LINE, INC.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC HARBOR LINE, INC., <br><br> Plaintiff, <br><br> v. <br><br> BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, GENERAL COMMITTEE OF ADJUSTMENT, UNION PACIFIC WESTERN LINES AND PACIFIC HARBOR LINES <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR DECLARATORY RELIEF; INJUNCTION; AND COMPENSATORY DAMAGES** <br><br> **[Railway Labor Act 45 U.S.C. § 151 *et seq*]** |

-1-

# PRELIMINARY STATEMENT

1. Plaintiff Pacific Harbor Line, Inc. ("PHL") brings this action seeking a declaratory judgment and an injunction to enforce the mandatory dispute resolution procedures of the Railway Labor Act, 45 U.S.C. § 151 *et seq* ("RLA"). Under the RLA, labor disputes concerning the interpretation or application of a collective bargaining agreement ("CBA") are known as "minor disputes." Minor disputes are subject to mandatory arbitration, and strikes over such disputes are prohibited.

2. A dispute has arisen between PHL and Defendant the Brotherhood of Locomotive Engineers and Trainmen, General Committee of Adjustment, Union Pacific Western Lines and Pacific Harbor Lines ("BLET GCA") concerning the interpretation and application of an existing CBA between PHL and BLET GCA. The dispute involves PHL's most recent change to its attendance policy. BLET GCA has objected to PHL's modification of its attendance policy, and has taken the position that PHL must negotiate changes to its attendance policy. However, the CBA does not prohibit PHL from establishing or modifying rules of employee conduct, including attendance, and PHL has a past practice of exercising its retained prerogative to periodically modify its attendance rules by unilateral action. PHL's right to revise its attendance rules and other rules of conduct is an implied term of the CBA.

///
///
///

3. BLET GCA has advised PHL that BLET GCA views the dispute to be a "major dispute" under the RLA and has threatened to strike against PHL over implementation of the new attendance policy.

4. A strike against PHL would deprive shippers, long haul freight carriers and the public of essential freight transportation service and cause severe and irreparable harm.

5. To avert any risk of a strike and a disruption to customers and the public, PHL has voluntarily delayed implementing the changes to its attendance policy permitted by the CBA. However, there exists a live and ripe controversy as to whether the dispute between the parties is a "minor dispute" or a "major dispute" under the RLA, and whether BLET GCA is allowed to strike over PHL's actions.

6. Accordingly, PHL has brought this action seeking: (1) a declaratory judgment that the dispute between the parties over the interpretation or application of their existing CBA is a "minor dispute" under the RLA; (2) a declaratory judgment that BLET GCA's threats to engage in a strike or other job action over this minor dispute violate the Union's obligation to arbitrate such disputes under Sections 3 and 2 First of the RLA, 45 U.S.C. §§ 152, First and 3; and (3) permanent injunctive relief ordering BLET GCA to resolve the present dispute through the mandatory and exclusive arbitration procedures under Section 3 of the RLA, 45 U.S.C. § 153, and to refrain from striking or otherwise engaging in any job action over such a dispute.

## PARTIES

7. Plaintiff, PHL is a short line railroad carrier that was created to provide rail transportation, maintenance and dispatching services to the Ports of Long Beach and Los Angeles ("the Ports"), which together form the largest container port in the United States. PHL is a wholly owned subsidiary of Anacostia Rail Holdings, Inc. PHL was incorporated in 1997, and its principal place of business is located in Wilmington, CA. PHL is a "carrier" within the meaning of Section 1, First of the RLA, 45 U.S.C. § 151, First. PHL currently operates a Class III railroad system encompassing approximately 18 route miles and 59 track miles in and around the Ports.

8. Defendant BLET GCA is an unincorporated labor organization in which employees participate and that exists for the purpose of, among other things, dealing with carriers pursuant to the RLA concerning rates of pay, rules and working conditions, including negotiation and administration of CBAs. BLET GCA is a "representative" within the meaning of Section 1, Sixth of the RLA, 45 U.S.C. § 151, Sixth. On PHL, BLET GCA represents Engineers and Assistant Engineers who operate PHL trains, as well as Maintenance of Way Foremen/Inspectors and Maintenance of Way Workers who are responsible for inspection, maintenance and repair of PHL's railroad tracks and structures.

## JURISDICTION AND VENUE

9. Jurisdiction exists pursuant to the RLA, 45 U.S.C. §§ 151-188 and 28 U.S.C. §§ 1331, 1337.

10. Plaintiff PHL and Defendant BLET GCA are both actively doing business within the Central District of California.

11. Venue over this action properly lies in the Central District of California under 28 U.S.C. 1391(b)(1).

## THE RLA REQUIRES ARBITRATION OF MINOR DISPUTES

12. Under the RLA, disputes concerning the interpretation or application of CBAs are known as "minor disputes," and are subject to mandatory arbitration. The characterization of a dispute as a "minor dispute" does not reflect the importance or value of the dispute. Rather, the term "minor dispute" means that the dispute is one over the interpretation or application of an existing agreement, rather than a dispute over the formation of, or change to the terms of, an agreement. Section 3 of the RLA requires minor disputes to be resolved exclusively through arbitration before the National Railroad Adjustment Board ("NRAB"), or before an arbitration panel of coordinate jurisdiction established by the parties pursuant to the RLA (known as a Public Law Board or a Special Board of Adjustment). 45 U.S.C. § 153.

13. Under the RLA, a dispute is a "minor dispute" subject to mandatory arbitration so long as the rail carrier's position with respect to the merits of the dispute is not "frivolous or obviously insubstantial." *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n.*, 491 U.S. 299, 303-05 (1989). A union may not strike over a minor dispute. *Bhd. of R.R. Trainmen v. Chi. R. & I.R.R. Co.*, 353 U.S. 30, 39-42 (1957).

14. The dispute over PHL's right to establish and implement a policy governing attendance is a "minor dispute" under the RLA. A minor dispute "relates

-5-
COMPLAINT FOR DECLARATORY RELIEF; INJUNCTION AND COMPENSATORY DAMAGES
CASE NO.:
LEGAL\34380082\6

either to the meaning or proper application of a particular provision [in a CBA] with reference to a specific situation or to an omitted case." *Consolidated Rail Corp. v. Railway Labor Execs' Ass'n*, 491 U.S. 291, 303 (*quoting Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945)).  "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement." *Conrail*, 491 U.S. at 307.

15.   A CBA includes both express and implied terms.  *Conrail*, 491 U.S. at 311.  Where a CBA does not expressly prohibit a carrier from taking a contested action, the carrier at least arguably retains the right to take that action.  *Airline Prof. Ass'n, Teamsters Local Union 1224 v. ABX Air, Inc.*, 400 F.3d 411, 415-16 (6th Cir. 2005).

## THE PARTIES' COLLECTIVE BARGAINING AGREEMENT

16.   PHL and BLET GCA are parties to a CBA, most recently amended on July 7, 2013, which together with terms implied therein, including past practice and management prerogative, establishes the rates of pay, rules and working conditions of employees represented by BLET GCA.

17.   The CBA does not contain any provision that prohibits or otherwise restricts PHL's prerogative to establish work rules, including rules concerning attendance.  On the contrary, the CBA contains provisions that acknowledge PHL's

-6-
COMPLAINT FOR DECLARATORY RELIEF; INJUNCTION AND COMPENSATORY DAMAGES
CASE NO.:
LEGAL\34380082\6

right to determine whether an employee's absence is excused or unexcused. For example, Article 21 "Vacations" provides a bonus of three additional vacation days for the following calendar year for employees who complete a minimum of 260 days of service in a calendar year and who do not have an "unexcused" absence in that year. Nowhere does the CBA define what absences are "unexcused;" that determination is left entirely to PHL's discretion.

18. PHL has established, and currently maintains, an absenteeism policy that it established unilaterally.

19. PHL also maintains an operating rule entitled GCOR 1.15 - Duty - Reporting or Absence, which provides:

> Employees must report for duty at the designated time and place with the necessary equipment to perform their duties. They must spend their time on duty working only for the railroad. Employees must not leave their assignment, exchange duties, or allow others to fill their assignment without proper authority. Continued failure by employees to protect their employment will be cause for dismissal.

PHL did not bargain with BLET GCA over the establishment or implementation of this operating rule.

20. PHL repeatedly has made changes to its attendance policy over several years without bargaining with BLET GCA. Since PHL began operations in 1997, it has maintained an employee handbook, which it developed unilaterally, and which has always included a provision governing employee attendance.

COMPLAINT FOR DECLARATORY RELIEF; INJUNCTION AND COMPENSATORY DAMAGES
CASE NO.:
LEGAL\34380082\6

21. In January 2015, and again in May 2015 and January 2016, PHL issued "Superintendent Notices" that set out its expectations regarding regular and prompt attendance, and prescribed specific disciplinary action to be taken for unexcused absences. PHL did not bargain with BLET GCA before issuing these Superintendent Notices.

22. There is no provision in the CBA that allows employees to take unpaid, unexcused absences, or limits PHL's right and ability to manage its workforce by taking disciplinary action against employees who have an excessive number of unexcused absences.

23. With respect to disciplinary action, Article 20 of the CBA provides that employees "shall not be disciplined without just cause and without a fair and impartial fact finding session," and describes how the fact finding process works. Nothing in the disciplinary provision of the CBA, or any other provision, limits PHL's right to establish rules of conduct, including rules governing attendance, subject to the requirement that PHL follow the contractual fact finding process if it takes disciplinary action for a violation of one of those rules.

**DESCRIPTION OF THE MINOR DISPUTE**

24. In December 2017, PHL management informed representatives of BLET GCA that the company intended to change its existing, unilaterally imposed, attendance policy effective January 1, 2018.

25. On December 29, 2017, counsel for BLET GCA sent a letter to PHL's President, Otis Cliatt, challenging PHL's right to implement the new attendance policy, and stating that "BLET GCA will treat it as a Major Dispute under the Railway Labor Act, which gives it the right to call a strike in response to your unilateral change in working conditions before negotiating to impasse." A copy of that letter is attached as Exhibit A. In that letter, counsel for BLET GCA claimed that Article 25 of the CBA between PHL and BLET GCA has specific language governing "excessive" and "unauthorized" absences, "and put in place a requirement of 85 percent availability." However, these provisions cited by BLET GCA's attorney do not exist anywhere in the parties' CBA.

26. On January 3, 2018, representatives of PHL met with BLET GCA Local Chairman Jose Covarrubias to discuss BLET GCA's objections to the new attendance policy. Mr. Covarrubias identified a number of objections to various parts of the new policy, including how PHL had defined what constitutes being "tardy," and the provision for the loss of performance incentive payments for employees who receive various levels of written warnings based on the number of points accumulated. Mr. Covarrubias stated that PHL was required to bargain with BLET GCA before making any changes to its attendance policy, which he claimed resulted in changes in the parties' CBA, and repeatedly stated that BLET GCA planned to strike PHL if the new attendance policy is implemented.

27. On January 22, 2018, Otis Cliatt, President of PHL met with BLET GCA General Chairman Brian Carr to discuss PHL's plan to implement the new attendance policy and BLET GCA's concerns regarding the new policy.  PHL was willing to make some changes to the new attendance policy to address BLET GCA's concerns, but insisted that the new attendance policy be included in an addendum to the existing employee handbook, and remain subject to modification at PHL's discretion.

28. Mr. Carr took the position that the new attendance policy should be included in an amendment to the parties' current CBA, and stated that PHL could not implement any changes to its attendance policy without first reaching an agreement with BLET GCA.

29. PHL's right to manage and regulate employees' attendance is well established under the applicable CBA.  Nothing in the CBA between PHL and BLET GCA prohibits PHL from establishing policies to regulate and monitor employees' attendance and availability.  On the contrary, on multiple occasions in 2015 and 2016, PHL unilaterally issued Superintendent Bulletins that expressly regulated the subject of employee attendance.

30. In addition, PHL's right to establish and implement a policy governing attendance is well established by numerous arbitration awards that hold that a carrier retains discretion to adjust its employment policies unless specifically limited or

restricted from doing so by an existing CBA. The National Railroad Adjustment Board ("NRAB") has clearly stated the rule as follows:

> We are well aware that enlightened railroad labor organizations recognize the principle that the schedule agreements do not deny to the carrier the right to manage and operate its properties economically and efficiently and that the carrier is also under legal obligation to do so. The carrier's fundamental management rights are restricted only to the extent that they are limited or surrendered in the schedule agreements.

*BLE v. Southern Pacific Co.*, NRAB 1st Div., Award No. 16032 (Jan. 27, 1953). The NRAB has also clarified that "the burden is not on the Carrier to show that its action is authorized by some provision of the Agreement. Rather the burden is upon the complaining employees to show that the action taken violates some part of the Agreement." *Fetzer v. Ill. Central Gulf R.R. Co.*, NRAB 3d Div., Award No. 24998 (1984).

31. A carrier's right to institute new or additional attendance requirements also has been recognized by the courts. For example, in *Burlington Northern and Santa Fe Railway Co. v. Brotherhood of Locomotive Engineers*, No. 4:99-CV-0675 R (N.D. Tex. 1999), the Court held that a dispute over the carrier's adoption of an "Availability Policy," which required employees to be available for a certain percentage of time, was a minor dispute under the RLA. In doing so, the Court explained:

> BNSF and its predecessors have a history of implementing policies regarding availability for work, attendance, and absenteeism through implementing various policies,

-11-

practices, and work rules for the last twenty years…BNSF's position that the Availability Policy does not conflict with the [parties' existing agreement] is at least arguable and is not obviously insubstantial…[b]ecause BNSF's contractual position is, at least, arguable and is not obviously insubstantial, any dispute over BNSF's 1999 Availability Policy is a "minor dispute" under the RLA and a strike, picketing, job action or other concerted work stoppage is prohibited over a minor dispute.

32. BLET GCA has disputed PHL's right to adopt new attendance rules to regulate attendance of BLET GCA-represented employees.  In particular, BLET GCA has taken the position that PHL has attempted to negotiate changes to its attendance rules in the past, and therefore, is required to bargain with the Organization before making any changes to its current rules.

33. However, PHL's right to establish and implement its attendance policy as planned is firmly established by the terms of the applicable agreement and many years of past practice and arbitration precedent.

34. The current dispute over the implementation of a new attendance policy constitutes a "minor dispute" as that term is used under the RLA.  The dispute arises out of the interpretation or application of an existing agreement concerning rates of pay, rules and working conditions.  And, PHL's position with respect to the merits of the dispute is not "frivolous or obviously insubstantial."

**ALLEGATIONS SUPPORTING INJUNCTIVE RELIEF**

35. A shutdown of PHL's rail system would cause immediate and irreparable harm to PHL, to its customers, and to the public.  As described above, PHL provides

-12-

rail transportation, maintenance and dispatching services to the Ports, which together form the largest container port in the United States. Nearly 40% of all United States waterborne trade comes through the Ports, which translates to about 17-18 million shipping containers annually. To accommodate the large volume of traffic, the Ports operate 24 hours a day, 7 days a week.

36. As a short line rail carrier, PHL is responsible for the rail transportation of cargo while it is in the port area—an approximately 18-mile radius, referred to herein as the "Port Area." When ships come into the Ports, PHL crews take rail-bound cargo from the shipping terminal, haul it through the Port Area, and transfer it to a long-haul rail carrier that will then transport the cargo to its final destination. Likewise, when cargo comes into the Ports via railroad to be exported on ships, PHL crews transport the cargo through the Port Area and deliver it to the appropriate shipping terminal.

37. PHL provides essential rail switching services for nine on-dock intermodal terminals and provides dispatching services for roughly 140 intermodal or unit trains per day. PHL switches over 40,000 units of carload freight each year. PHL's operations in the Ports connect with BNSF Railway Company and Union Pacific Railroad, two of the largest freight railroad networks in North America. Because PHL is currently the only short line rail carrier in the Ports, even a short

disruption to PHL's rail transportation service would cause an immediate "ripple effect" disruption to the operations of those connecting carriers.

38. A strike by PHL's BLET GCA-represented employees would also be financially devastating to PHL and would likely impact the Ports as a whole, even causing them to shut down completely for the duration of the strike, damaging PHL's reputation, customer relationships and commercial relationships with the long-haul railroads that handle traffic to and from the Ports. In addition, a strike against PHL could be honored by thousands of other unionized employees. Even small labor strikes in the past have been known to nearly cripple both Ports.

## COUNT I -- MINOR DISPUTE

39. PHL incorporates by reference as if fully set forth herein each and every allegation of Paragraphs 1 through 38 above.

40. This Cause of Action arises under Sections 2 First and 3 of the RLA, 45 U.S.C. §§152 First, 153.

41. There exists a current, live and ripe controversy that warrants declaratory and injunctive relief from this Court.

42. PHL has an existing CBA with BLET GCA, which remains in full force and effect. This agreement, together with past practice and other established working conditions, set forth the terms and conditions of employment of PHL's BLET GCA-represented employees.

-14-

43. PHL contends that its CBAs, as properly interpreted, do not prohibit PHL from implementing or adopting new policies to regulate and monitor employees' attendance.

44. BLET GCA disputes PHL's interpretation of the applicable CBA, and maintains that PHL is prohibited from unilaterally adopting establishing a new policy for attendance. BLET GCA has expressly asserted that the dispute over the adoption and implementation of a new attendance policy is a "major dispute" under the RLA, which would entitle BLET GCA to strike overt the dispute.

45. The dispute between BLET GCA and PHL over the implementation of new attendance policy is a minor dispute under the RLA, and thus subject to mandatory arbitration. The nature of the dispute is one that arises out of the interpretation or application of the parties' CBA, and PHL's position with respect to the merits of the dispute is not frivolous or obviously insubstantial.

46. BLET GCA's threat to strike PHL over the instant dispute violates its duties under the RLA to pursue and exhaust the exclusive, administrative remedies for minor disputes which are set forth in Section 3 of that Act, including final and binding arbitration. The RLA precludes strikes, work stoppages, or other forms of self-help over minor disputes.

/ / /

/ / /

47. PHL has at all times been willing to comply with the procedures of the RLA and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with BLET GCA.

48. PHL has exhausted all available remedies under the RLA to prevent the unlawful activity and has no adequate remedy at law.

49. As to each item of relief sought herein, greater injury will be inflicted on the public and PHL if such relief is denied than will be inflicted upon BLET GCA by the granting thereof.

## COUNT II -- BREACH OF SECTION 2 FIRST

50. PHL incorporates by reference as if fully set forth herein each and every allegation of Paragraphs 1 through 49 above.

51. This Cause of Action arises under Section 2 First of the RLA, 45 U.S.C. §152 First.

52. Section 2 First imposes an affirmative duty on the parties:

> to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. §152 First.

/ / /

/ / /

53. BLET GCA has breached its duty under Section 2 First to maintain its existing CBA with PHL by threatening to strike PHL over the parties' dispute involving the implementation of a new attendance policy.

54. A strike by BLET GCA against PHL would cause substantial disruption to PHL.

55. PHL has been willing at all times to comply with its duties under Section 2 First and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with BLET GCA.

56. PHL has exhausted all available remedies under the RLA to prevent the unlawful activity and has no adequate remedy at law.

57. As to each item of relief sought herein, greater injury will be inflicted on the public and on PHL if such relief is denied than will be inflicted upon BLET GCA by the granting thereof.

## PRAYER FOR RELIEF

WHEREFORE, PHL respectfully requests that the Court grant the following relief:

1. Issue a Judgment declaring that the present dispute concerning PHL's implementation of a new attendance policy is a "minor dispute" under the RLA, and is subject to the compulsory and exclusive arbitration mechanisms set forth in section 3 of the RLA, 45 U.S.C. § 153;

2. Issue a Judgment declaring that BLET GCA's threat to strike against PHL violates the RLA by seeking to circumvent the mandatory and exclusive authority of the National Railroad Adjustment Board;

3. Issue a Judgment declaring that, by threatening to engage in a strike, BLET GCA has breached its duty under Section 2 First of the RLA to make and maintain agreements;

4. Issue an Injunction restraining and enjoining BLET GCA, individually and as representatives of all members, their agents, successors, deputies, servants, and employees, and all persons acting by, with, through or under BLET GCA, or by and through BLET GCA's orders, and all others acting in concert or participation with BLET GCA:

(a) from calling, instigating, authorizing, seeking authorization for, encouraging, participating in, approving, or continuing any strike, work stoppage, "sick-out," or slowdown against PHL or any other rail carrier affiliated with PHL, and all acts in furtherance or in support thereof;

(b) from taking any action that has the purpose or effect of disrupting PHL's operations, including but not limited to engaging in a strike;

(c) from failing to report for work unless otherwise excused under existing CBA and applicable work rules;

   (d) from interfering with ingress to and egress from said premises by PHL employees and other persons having business with PHL, including the delivery, unloading, dispatch, and movement of rolling stock and equipment and the contents thereof;

   (e) from seeking to resolve the minor dispute with PHL by any means (including picketing, patrolling or economic pressure of any kind) other than by pursuing the minor dispute resolution procedures contained in the RLA; and

   (f) directing BLET GCA and said other persons to take all steps within their power to prevent said strike, work stoppage, "sick-out," or slowdown, and all acts in furtherance or in support thereof from occurring or from continuing;

  5. Issue an Injunction prospectively restraining and enjoining BLET GCA, its agents, successors, deputies, servants, and employees, and all persons acting by, with, through or under BLET GCA, or by and through BLET GCA's orders, and all others acting in concert or participation with BLET GCA, from striking PHL or taking other forms of self-help, and all acts in furtherance or in support thereof including but not limited to engaging in a strike;

  6. Award PHL damages to compensate it for losses sustained as a proximate result of BLET GCA's unlawful participation in and encouragement of strikes by PHL's employees;

7. Order BLET GCA to pay the costs of these proceedings, including reasonable attorneys' fees; and

8. Grant PHL such other and further relief as the Court may deem proper and just in the circumstances.

Respectfully submitted,

Dated: March 9, 2018

COZEN O'CONNOR

By: */s/ Craig A. Schloss*
CRAIG A. SCHLOSS
AIMEE AXELROD PARKER
ANDREW J. ROLFES
ROBERT S. HAWKINS
Attorneys for Plaintiff
PACIFIC HARBOR LINE, INC.